## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JANET GRAVES, surviving widow and<br>next of kin of NATHAN GRAVES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-19-60-SLP |
| | ) | |
| PENNSYLVANIA MANUFACTURERS'<br>INDEMNITY CO., and AMERICAN<br>CLAIMS MANAGEMENT, INC., | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ALLIANT INSURANCE SERVICES<br>d/b/a TRIBAL FIRST FOR HUDSON<br>INSURANCE COMPANY, | ) | |
| | ) | |
| Intervenor. | ) | |

## O R D E R

Before the Court is Defendants' Motion to Exclude Testimony of Plaintiff's Expert Witness Deborah Rankin [Doc. No. 22]. Plaintiff has responded [Doc. No. 25] and Defendants have replied [Doc. No. 31].[1] The matter is briefed and ready for decision.

## I.    Background

This is an action for bad faith breach of an uninsured/underinsured (UIM) policy. Plaintiff has retained as an expert Deborah Rankin (Ms. Rankin).

---

[1] Citations to the parties' submissions reference the Court's ECF pagination.

Ms. Rankin offers a number of opinions in this case as to why Defendants did not act reasonably and in good faith in the handling of Plaintiff's claim for UIM benefits. Defendants move to exclude her expert testimony in its entirety.  Defendants assert that Ms. Rankin's proposed testimony is not relevant or helpful and would invade the province of the jury.  Defendants further assert Ms. Rankin is not qualified and her opinions are otherwise unreliable.

## II.   Ms. Rankin's Expert Opinion

Ms. Rankin has been a licensed adjuster in the State of Oklahoma since 1983 and was previously employed by State Farm Insurance Company where she worked for approximately 33 years until her retirement in 2016.  She evaluated only UIM claims for almost one-half of her career.  She has also conducted classes on UIM claims handling and trained claim representatives as to how to handle UIM claims.

Ms. Rankin offers the following general opinions in her expert report:

- Defendant American Claims Management, Inc. (ACM) failed to perform a reasonable investigation of the accident to determine liability promptly.

- ACM failed to keep Ms. Graves informed.

- ACM failed to prepare a prompt and fair evaluation of the claim.

- Defendants "appear" to have placed their interests ahead of their insured's.

- The lack of Defendants' experience in handling Oklahoma UIM claims was apparent throughout the handling of the claim.

- An insurer cannot force an insured to file suit to collect benefits they are owed.

*See* Rankin Expert Report [Doc. No. 22-1] at 9-15.  In support of each of these general

opinions, Ms. Rankin details specific conduct of Defendants.  *Id*.

Ms. Rankin then summarizes her opinion as follows:

> ACM's handling of this case is far below the required standard of good faith
> and fair dealing outlined in Oklahoma Law.  ACM failed to investigate the
> claim at an even minimal standard.  They failed to exhibit any sense of
> urgency in bringing the claim to conclusion.  They failed to make even
> minimal contacts with all of the parties involved.  They did not prepare a
> reasonable evaluation of this wrongful death claim.  While some of their
> issues/ questions claimed were valid initially, ACM failed to make any
> reasonable attempts to resolve those issues and used them to delay a payment
> that was owed for months before it was offered.  They placed their own
> interests ahead of their insureds' interests creating an adversarial situation.
> The situation created by ACM lead [sic] the insured to believe she needed to
> hire counsel and eventually file a lawsuit.  ACM seemed to know little about
> the standard for handling a UIM claim in Oklahoma.  They made excuses for
> poor handling rather than attempting to work with the insured and move the
> claim forward promptly.  The pattern of handling seems to shows [sic]
> minimal interest in taking care of Mrs. Graves and more interest in the
> insurer's subrogation claim and finding someone else to be responsible for
> payment.  Mr. Matthiessen, in his deposition, saw nothing wrong with the
> handling of the claim nor did he believe there was any delay.  Unfortunately,
> for all involved, I strongly disagree.

*Id*. at 15.

Ms. Rankin identifies the following "insurance standards" in support of her opinion:

- In UIM cases, insurers are charged with conducting an appropriate investigation by proactively pursuing the facts of the accident through the utilization of available tools including, but not limited to, police reports and interviewing witnesses.

- Insurers must be proactive in resolving claims and cannot simply wait for the insured to provide the needed information.  Insurers are charged with pursuing information with a sense of urgency.

- Insurers must advise the insured of all available coverage applicable to the claim and limits of that coverage.

- Insurers must keep the insured informed of developments in a timely manner.

- Insurers are charged with a duty to fairly and accurately evaluate the claim for damages.

- Insurers must be familiar with specific state laws and procedures for handling UIM claims.

- Insurers must not place their interests ahead of the interests of the insured.

- Insurers should not force their insureds to file a lawsuit to recover benefits. An insured is not required to make a demand to receive an offer from the insurer under a UIM policy.

*Id*. at 8-9.

## III.   Governing Standard

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 which requires the district court to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). The court acts as "gatekeeper" and must engage in a two-part inquiry.[2] First, Rule 702 requires the court to determine whether the proffered expert is qualified "by knowledge, skill, experience, training, or education" to render an opinion. Fed. R. Evid. 702. If sufficiently qualified, "the court must then determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology, as set forth in *Daubert*." *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc).

---

[2] The Court has considerable discretion in how to perform its gatekeeping function under *Daubert* and a formal hearing is not mandated. *Bill Barrett Corp. v. YMC Royalty Co., LP*, 918 F.3d 760, 770 (10th Cir. 2019); *see also Burlington Northern & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1031 (10th Cir. 2007). Here, neither party has requested a hearing.

When a party objects to the admissibility of expert testimony, the proponent of the testimony bears the burden of establishing its admissibility. *Nacchio*, 555 F.3d at 1241. The court must make specific findings on the record to demonstrate it has performed its duty as gatekeeper. *Barrett*, 918 F.3d at 770.

## IV.   Discussion

Defendants do not identify any specific opinion testimony as inadmissible.  Rather Defendants seek to exclude Ms. Rankin's expert opinion in its entirety on grounds Ms. Rankin is not qualified to render an expert opinion in this case and her opinion is not reliable because it will not assist the trier of fact.

### A.   Qualifications

As set forth, Ms. Rankin has extensive claims handling experience in the State of Oklahoma, including UIM claims – the type of claim at issue here.  The Court concludes Ms. Rankin's experience sufficiently qualifies her to testify on matters related to Defendants' handling of Plaintiff's UIM claim.  Defendants do not address Ms. Rankin's extensive claims-handling experience in challenging her qualifications.   Instead, Defendants contend she is not qualified to testify because she is not an attorney, but opines extensively on Oklahoma insurance law.  The Court finds that issue is more properly addressed in the context of determining whether Ms. Rankin's opinion is reliable.

### B.   Reliability

Defendants' overarching argument in support of their *Daubert* Motion is that whether Defendants violated the duty of good faith and fair dealing is a question left to the jury and not to an expert witness. Defendants argue Ms. Rankin's opinion is not helpful

because her opinion impermissibly invades the province of the jury by purporting to answer the ultimate issue of fact in this case.  In this regard, Defendants state that their own expert witness, Arthur T. Bates, has been designated only as a rebuttal expert and that if the Court excludes Ms. Rankin, "Mr. Bates should also be excluded."  Defs.' Reply at 6.

In response to Defendants' *Daubert* Motion, Plaintiff sets forth 45 numbered paragraphs of questions and states: "[h]ere are just some of the issues in this case that Plaintiff believes are technical enough to require expert testimony[.]"  Pl.'s Resp. at 4-10. Plaintiff ultimately argues that Ms. Rankin's testimony is necessary so that the jury can determine whether Defendants' excuses for delaying payment to her are legitimate or not. Pl.'s Resp. at 13.  She further argues that expert testimony is needed, not to instruct the jury on what the law is, but to assist the jury in understanding "[h]ow the law applies to this Defendants' conduct as it directly relates to Oklahoma UM/UIM claim handling[.]" *Id.*[3]

Rule 704 of the Federal Rules of Evidence allows an expert witness to testify about an ultimate question of fact.  *United States v. Richter*, 796 F.3d 1173, 1195 (10th Cir. 2015). To be admissible, however, the expert's testimony must be helpful to the trier of fact.  Fed. R. Evid. 702; *see also O'Sullivan v. Geico Cas. Co.*, 233 F. Supp.3d 917, 921-22 (D. Colo. 2017) ("The line between what is helpful to the jury and what intrudes on the jury's role as

---

[3] Defendant's wholesale challenge to Ms. Rankin's testimony, and Plaintiff's equally vague response, makes it difficult for the Court to address any particular testimony that should be excluded.

the finder of fact is not always clear, but it is well-settled that '[a]n opinion is not objectionable just because it embraces an ultimate issue.'" (quoting Fed. R. Evid. 704(a)).

Whether expert testimony is proper as to the reasonableness of an insurer's particular conduct is a matter of the court's discretion. *Vining v. Enterprise Fin. Group, Inc.*, 148 F.3d 1206, 1218 (10th Cir. 1998); *see also Ford v. Allied Mut. Ins. Co.*, 72 F.3d 836, 841 (10th Cir. 1996) (expert testimony that insurer was relying on industry practice to decline payment under UIM policy provision was admissible on issue of bad faith). If the testimony will assist the trier of fact in understanding practices and procedures in the insurance industry, such testimony is proper. *Ford*, 72 F.3d at 841; *see also Thompson v. State Farm Fire & Cas. Co.*, 34 F.3d 932, 941 (10th Cir. 1994) ("[I]t is plainly within the trial court's discretion to determine whether expert testimony is admissible when the expert offers to testify on an issue that a jury is capable of assessing for itself."). The court's exercise of discretion is fact specific and dictated by the particular circumstances of the case. *See North Am. Specialty Ins. Co. v. Britt Paulk Ins. Agency, Inc.* 579 F.3d 1106, 1112 (10th Cir. 2009) (fact that district court did not abuse its discretion in admitting expert testimony in one case "d[id] not lend measurable support to the contrary position that the district court in this case abused its discretion by refusing to permit similar testimony").

Here, the average juror is not likely to be familiar with the claims handling procedures or industry standards governing UIM claims in Oklahoma. Thus, expert testimony on whether a reasonable insurer would have delayed payment of benefits or investigated the claim in a different manner under the same facts and circumstances at issue

here would assist the jury in determining whether Defendants deviated from those procedures or standards.

The Court must further determine whether Ms. Rankin's opinions are otherwise reliable. Defendants contend that Ms. Rankin is not a lawyer and should not be permitted to opine on Oklahoma insurance law. As Defendants correctly argue, it is not the proper function for an expert witness to define the law or "direct the jury's understanding of the legal standards upon which their verdict must be based." *Specht v. Jensen*, 853 F.2d 805, 810 (10th Cir. 1988). What constitutes bad faith as a matter of Oklahoma law is a duty of the court through its jury instructions. But an expert may sometimes "be called upon to aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms." *Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, 1246 (10th Cir. 2000); *see also Richter*, 796 F.3d at 1195 ("An expert may not state legal conclusions drawn by applying the law to the facts, but an expert may refer to the law in expressing his or her opinion.") (internal quotation marks and citation omitted).

Based on Ms. Rankin's experience, she is qualified to offer testimony regarding decisions made by Defendants in this case and whether those decisions comport with industry standards and the laws of the State of Oklahoma. *See Barrett*, 918 F.3d at 770 ("Where an expert testifies based on experience, the tribunal reviews the reliability of the testimony with reference to the nature of the issue, the expert's particular expertise, and the subject of the testimony." (internal quotation marks and citations omitted)); *see also Nacchio*, 555 F.3d at 1258 (recognizing that an expert's testimony can be based on experience if it is the right type of experience and supports a conclusion that the expert's

8

opinion on a subject is reliable); *Magallan v. Zurich Am. Ins. Co.*, No. 16-CV-0668-CVE-FHM, 2017 WL 4012964 at *10 (N.D. Okla. Sept. 12, 2017) (unpublished op.) (allowing expert testimony notwithstanding expert's failure to identify specific source of her industry standards where she had extensive experience in the insurance industry relevant to offering an opinion as to proper claims handling procedures); *Morgan v. Unum Life Ins. Co. of Am.*, No. 2:10-CV-957 DN, 2012 WL 3156569 at *3 (D. Utah Aug. 3, 2012) (unpublished op.) (expert's extensive experience with claims handling qualified her to testify with respect to industry standards for investigation and evaluation of disability claims).

Defendants challenge the reliability of Ms. Rankin's opinion, in part, based on contradictions within her report, instances where she criticizes Defendants' conduct notwithstanding her own similar claims handling, or her incomplete discussion of the factual record.[4]  But the Court finds these matters are properly addressed through cross-examination, not exclusion of her testimony. *See, e.g., Daubert*, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional approach and means of attacking shaky but admissible evidence."); *see also O'Sullivan*, 233 F. Supp. At 922 ("[R]ejection of expert testimony is the exception rather than the rule" and vigorous cross-examination can be used to address "shaky but admissible evidence") (internal quotations marks and citation omitted).

---

[4] For example, Defendants argue Ms. Rankin's "timeline" of events prematurely ends as of September 5, 2018.  In responding to Defendants' summary judgment motion, Plaintiff represents that she does not base her claim of bad faith on any conduct occurring after September 2018.

The Court nonetheless finds certain limitations should be imposed. First, Plaintiff is cautioned that Ms. Rankin must explain any insurance standards upon which she relies. She may not simply direct the jury to accept her conclusions about a particular matter. *See Richter*, 796 F.3d at 1195-96 ("An expert may not simply tell the jury what result it should reach without providing any explanation of the criteria on which that opinion is based or any means by which the jury can exercise independent judgment."); *cf. O'Brien v. Travelers Property Cas. Co. of Am.*, No. CIV-16-1176-HE, 2018 WL 8335138 at *3 (W.D. Okla. Jan. 29, 2018) (unpublished op.) (excluding expert testimony where report did not identify industry standards in any meaningful way; "[s]imply reciting that a particular practice does not meet industry standards, without even a minimal effort to identify or articulate what the standard is, is insufficient").[5]

Second, in many instances, Ms. Rankin attempts to opine as to Defendants' intent or state of mind. *See, e.g.*, Rankin Expert Report at 13 ("It appears ACM and PMI placed their interests ahead of their insured's."); *see also id.* ("It appears neither ACM nor Mr. Gomez knew that the insured is not obligated to make a demand for payment."); *id.* at 15

---

[5] In this regard, the Court notes that in her expert report, Ms. Rankin does not identify any written publications, statutory provisions or applicable training materials. Although excerpts of the Oklahoma Unfair Settlement Claims Practices Act (OUSCPA) are attached to her opinion, she does not identify the Act as the basis for the industry standards she advances. Similarly, attached to her opinion is a "Law Summary" but her opinion does not specifically reference any of the cases cited. She additionally mentions Defendants' own guidelines in setting forth her opinion, but does not cite those guidelines as the source of her industry standards. As such, it is unclear whether the industry standards set forth are Ms. Rankin's understanding of a standard imposed by law, a statement of prevailing practice in the insurance industry or, simply Ms. Rankin's belief as to best practices that should be followed in the industry. These matters, to the extent problematic, can be properly explored on cross-examination.

("ACM seemed to know little about the standard for handling a UIM claim in Oklahoma"). Where an expert's opinion is based on subjective beliefs or unsupported speculation which is no more than *ipse dixit* guesswork, it is properly excluded. *See, e.g., Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *see also O'Sullivan* (excluding expert's speculative opinions about what may have motivated insurer's decisions). Thus, Ms. Rankin is not allowed to testify as to these speculative matters.

Finally, Ms. Rankin is not permitted to testify as to the ultimate conclusion to be reached by the jury – i.e., whether Defendants did, or did not, act in bad faith. Ms. Rankin may explain her view of Defendants' conduct, based on her familiarity with insurance industry practices, but she may not direct the jury that a verdict for Plaintiff is required.

In sum, the Court acknowledges Defendants' argument that, as a general matter, a jury is capable of assessing bad faith on its own. Indeed, numerous courts have so concluded, as Defendants set forth in their *Daubert* Motion. Here, however, the Court concludes Ms. Rankin's testimony would be helpful as disputes exist not only as to the facts but the legal analysis applied to those facts. Testimony from Ms. Rankin, an experienced claims adjuster, would assist the jury's understanding and appreciation of the issues involved and the relevant insurance industry standards.

The Court's rulings are meant to provide a framework as to the admissibility of particular areas of Ms. Rankin's proposed expert testimony, based upon her report. The Court cannot fully anticipate the manner in which those opinions will actually be offered at trial and, therefore, Defendants are not precluded from objecting to particular expert

testimony offered at trial.  *See Barrett*, 918 F.3d at 770, 771 (recognizing that the court can fulfill its gatekeeper role when asked to rule on an objection during trial).

IT IS THEREFORE ORDERED that Defendants' Motion to Exclude Testimony of Plaintiff's Expert Witness Deborah Rankin [Doc. No. 22] is GRANTED in part and DENIED in part.

IT IS SO ORDERED this 24th day of October, 2019.

SCOTT L. PALK
UNITED STATES DISTRICT JUDGE